# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ILEANA S. ARVIZU,** *et al.*, | 1:17-cv-219-LJO-EPG |
| **Plaintiffs,** | **MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| **ALEXANDER ACOSTA,[1]** *et al.*, | (ECF No. 24) |
| **Defendants.** | |

Plaintiffs Ileana S. Arvizu and ISA Contracting Services, Inc. ("Plaintiffs") filed this action against Defendants Alexander Acosta, the Secretary of the United States Department of Labor ("DOL"); Ruben Rosalez, the Western Regional Administrator of the DOL; and Susan Seletsky, an attorney employed by the DOL Office of the Solicitor (collectively, "Defendants"). ECF No. 20 (First Amended Complaint or "FAC"). This case stems from the initial refusal by the DOL on February 3, 2017, to renew Plaintiffs' Contractor Certificate of Registration, which Plaintiffs require to operate their business, and alleges that Defendants violated Plaintiffs' constitutional due process rights and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706. *See id.* Therefore, Plaintiffs now seek the following relief: 1) a writ of mandamus compelling Defendants to withdraw or strike any reference to a

---

[1] Although the FAC names Edward C. Hugler, the former acting Secretary of Labor, as an official-capacity Defendant, pursuant to Federal Rule of Civil Procedure 25(d), Alexander Acosta, Mr. Hugler's successor in office "is automatically substituted as a party" in place of Mr. Hugler.

1

denial of Plaintiffs' renewal of the Farm Labor Contractor Certificate of Registration; 2) declaratory relief and monetary damages under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), for the alleged constitutional violations; 3) relief pursuant to the Administrative Procedure Act ("APA"); and 4) attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"). *Id.*

Defendants now move for dismissal of all claims in the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2] ECF No. 24. Plaintiffs filed their opposition, ECF No. 27, and Defendants replied, ECF No. 28, and the matter was taken under submission for a decision on the papers pursuant to Local Rule 230(g). ECF No. 29.

## I. <u>SUMMARY OF ALLEGATIONS</u>[3]

Arvizu is the owner and founder of ISA Contracting Services, Inc. ("ISA"), a farm labor contracting corporation that provides labor to farmers to plant, cultivate, and harvest agricultural commodities. FAC ¶ 12-13. ISA provides jobs for approximately 200-300 agricultural employees every year. *Id.* As a farm labor contractor ("FLC"), ISA is "subject to a comprehensive regulatory scheme" and must have a DOL Certificate of Registration ("Certificate"), in addition to a license from the California Labor Commissioner. *Id.* ¶ 29. The state licensure is contingent upon the federal Certificate remaining current. *Id.* Arvizu and ISA have held a Certificate continuously since they began FLC work, and have renewed every year or two depending on whether the Certificate was issued for twelve or twenty-four months. *Id.* ¶ 40.

Item 9 on the Certificate application instructs the applicant to list "the Greatest Number of Migrant and/or Seasonal Agricultural Workers that will be in the Crew(s) at Any Time." *Id.* ¶ 41. Arvizu

---

[2] All further references to any "Rule" are to the Federal Rules of Civil Procedure, unless otherwise indicated.

[3] These allegations are drawn from the FAC, the general truth of which the Court must assume for purposes of Rule 12(b)(6). *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Attached to the FAC are several documents, all of which are incorporated into the complaint by reference and are proper subjects for judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

understood this question to address the number of workers in each crew. *Id.* ¶ 41. Because Plaintiffs generally employed seven or eight crews of 20 to 30 workers each during each harvest season, Arvizu normally estimated about 30 workers in each crew in response to this question. *Id.* In 2006, the first year Arvizu applied for a renewal, she wrote "50" in response to this question, and received a registration renewal without question. *Id.* ¶ 53. In 2008, Arvizu filed for a Certificate renewal and again wrote "50" in response to the question above. *Id.* ¶ 54. In 2009, Plaintiffs (after the formation of ISA as a corporation), wrote "35" in response to the question above. *Id.* ¶ 55. In 2010, Plaintiffs wrote "40." *Id.* ¶ 56. In 2011, Plaintiffs wrote "35." *Id.* ¶ 57. In 2012, Plaintiffs wrote "30." *Id.* ¶ 58. In 2013, Plaintiffs wrote "25." *Id.* ¶ 59. Every year, the registration was renewed without question. *Id.* ¶¶ 55-59. In 2015, Plaintiffs, assisted by an insurance broker with their paperwork, wrote "1000." *Id.* ¶ 60. Although this response was a "significant variance" from prior years, the registration was renewed without question. *Id.* ¶ 60.

For the 2017 renewal, which they filed in January 2017, Plaintiffs submitted an application for the Certificate renewal, listing "30" in response to the question at Item 9. *Id.* ¶ 42. "Defendants did not renew the application promptly as they had in the past, but instead held it, ostensibly for review." *Id.* When Plaintiffs inquired about the status of the Certificate renewal, they were told it was under review. *Id.* On February 3, 2017, less than one month before Plaintiffs were scheduled to begin seasonal farm labor contracting activities, Defendant Rosalez sent a letter notifying Plaintiffs that their registration would not be renewed. *Id.* ¶ 44. The letter read as follows:

> This is to notify you of the decision to refuse to renew your Farm Labor Contractor (FLC) Certificate of Registration. This determination is based on Section 103(a)(1) of the Migrant and Seasonal Agricultural Worker Protection Act (MSPA), 29 U.S.C. § 1813(A)(1).
>
> Section 103(a)(1) provides that the Secretary of Labor (the Secretary) may refuse to renew a certificate of registration to any person who has knowingly made any misrepresentation in an application for a certificate of registration.
>
> Section 103(a)(1) applies here because you knowingly misrepresented item 9 in your application for a certificate. Specifically, your FLC application that the Secretary received on January 11, 2017, stated that the greatest number of migrant workers or seasonal agricultural workers would

3

be in your crews is 30. This is a misrepresentation because you will employ more than 30 workers this year based on your past employment history of employing hundreds of workers. This knowing misrepresentation justifies the refusal to renew your FLC certificate.

. . .

On page 3 of the application for a certificate of registration received January 11, 2017, you signed an affirmation that all representations made by you were true to the best of your knowledge and belief. Each application contains the statement that "A false answer or misrepresentation to any question maybe punishable by fine or imprisonment."

You have a right to request a hearing on this decision to refuse to renew your certificate of registration. Such request must be made in writing no more than thirty (30) days after service of this notice.

*Id.* ¶¶ 45-46, 49; ECF No. 20-1, Ex. A.

Given the prior pattern of uncontested renewals using a similar range of numbers in Item 9 over the last decade, Plaintiffs were "completely surprised" by the DOL's decision not to renew their Certificate. FAC ¶ 52. Plaintiffs assert that instead of issuing the refusal notice, Defendants should have "notif[ied] [Plaintiffs] in writing of any incompleteness or error in the application and return the application for correction and completion, as specified in 29 C.F.R. § 500.48. *Id.* ¶¶ 65-66. Thus, Plaintiffs allege that "[t]he stated reason for denial of registration, misstating the number of workers employed, was a pretext for retaliation against Plaintiffs for asserting their rights in [a separate citation investigation[4] that was ongoing at the time] and to gain undue leverage to coerce Plaintiffs to concede and settle at mediation [that occurred in February 2017] on Defendants' preferred terms." *Id.* ¶ 50. They further allege that Defendant Rosalez is "personally aware" of Plaintiffs' separate citation and that Defendant Seletsky, who was "personally involved" in the prosecution of the citation, "was personally involved in targeting Plaintiffs' application for non-renewal." *Id.* Specifically, "Defendant Seletsky, acting as an advocate and adversary to Plaintiffs in the citation matter, involved herself as a neutral

---

[4] The DOL enforces the Migrant and Seasonal Agricultural Worker Protection Act ("MSPA"), a federal statute that regulates growers and FLCs. Id. ¶ 30. In its twelve years of operation, ISA had been cited by the DOL only one time in April 2015 for alleged violations of the MSPA in a dispute concerning civil penalties sought by the government. Id. ¶ 13. After ISA challenged the citation, the parties entered mediation and settled the dispute in February 2017. Id.

4

decision maker in the Registration renewal in violation of Plaintiffs' right to due process." *Id.* ¶ 51.

Furthermore, as a result of DOL's refusal to renew Plaintiffs' Certificate, Plaintiffs "faced an immediate threat to business," as they were scheduled to begin farm labor contracting activities in or around late February 2017, and Defendants' actions "forced Plaintiffs to file for an appeal of the non-renewal, incurring attorney fees and costs," which "cast uncertainty around the Registration that harmed Plaintiffs' reputation and threatened Plaintiffs' business relationships." *Id.* ¶ 69. Although Plaintiffs were allowed to operate while their appeal was pending and ultimately negotiated a settlement that included reinstatement of their Certificate, the initial non-renewal of the registration "tainted" Plaintiffs' Certificate, "by suggestion that they were lawbreakers on the verge of being shut down by the government." *Id.* ¶ 70. "Plaintiffs needed a stable, untainted, and fully renewed Registration in order to explore business opportunities, apply for H2-A certification, and to avoid uncertainty that could cause customers to cease doing business with them." *Id.* ¶ 72. It is Plaintiffs' position that "[t]he characterization of the answer to Item 9 on the application as a 'knowing misrepresentation' was nothing more than a pretext to deny Plaintiffs' due process and gain an undue advantage in related litigation." *Id.* ¶ 76.

## II. STANDARD OF DECISION

### A. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must, in accordance with Rule 8, allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562.

**B.      Rule 12(b)(1)**

"Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In a "facial" attack, the challenger accepts as true the plaintiff's allegations but "asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)." *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). In a "factual" attack, the challenger "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Leite*, 749 F.3d at 1121. In such circumstances, a court may examine extrinsic evidence without converting the motion to one for summary judgment, and there is no presumption of

the truthfulness of the plaintiff's allegations. *Safe Air for Everyone*, 373 F.3d at 1039. Moreover, the plaintiff "bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite*, 749 F.3d at 1121.

### III. ANALYSIS

#### A. Writ of Mandamus

Plaintiffs request[5] that the Court issue a writ of mandamus ordering Defendants to "withdraw and strike any reference to a denial of Plaintiffs' application for a renewed FLC Certificate Registration." FAC ¶ 88. Plaintiffs assert that they have a "clear right" to this relief because Defendants' denial of the FLC Certificate Registration was arbitrary and capricious, and there was "no colorable justification for denying the right to operate a lawful business because of a clerical issue on an application." *Id.* ¶ 87.

District courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or agency thereof to perform a duty owed to plaintiff." 28 U.S.C. § 1361. "Mandamus is an extraordinary remedy and is available to compel a federal official to perform his duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary and ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997). Even if these requirements are satisfied, the district court retains the discretion to deny mandamus relief. *Johnson v. Reilly*, 349 F.3d 1149, 1154 (9th Cir. 2003).

The Court agrees with Defendants that Plaintiffs have failed to state a claim for mandamus relief. *See* ECF No. 24-1 at 4-6. The FAC's request that the Court issue a writ of mandamus to compel Defendants to withdraw or strike the initial denial of Plaintiffs' Certificate is not a cognizable claim. In their opposition, Plaintiffs argue that Defendants' failure to provide Plaintiffs with the opportunity to

---

[5] Plaintiffs also request that the Court compel Defendants to "process their renewal application for a Farm Labor Contract Certificate of Registration." FAC ¶ 88. However, in paragraph 72 of the FAC, Plaintiffs admit that DOL ultimately renewed their FLC Certificate, which moots Plaintiffs' request. *See Manser v. Astrue*, 239 F. App'x 370 (9th Cir. Aug. 23, 2007) (affirming district court's denial of mandamus relief where the facts of the case reflected "an individual error already remedied.").

7

address Plaintiffs' response to Item 9 before issuing the denial was a violation of their statutory duty under 29 U.S.C. § 1812 to undertake an "appropriate investigation," which they contend is nondiscretionary, ministerial, and free from doubt," as contemplated by the Ninth Circuit in *Patel*. ECF No. 27 at 12-14. Upon review of the relevant statutes and regulations, the Court rejects Plaintiffs' argument. The regulation governing the issuance of certificate, 29 C.F.R. § 500.48, provides in relevant part as follows:

> The Administrator or authorized representative shall:
>
> (a) **Review** each application received and determine whether such application is complete and properly executed;
>
> (b) **When appropriate**, notify the applicant in writing of any incompleteness or error in the application and return the application for correction and completion;
>
> (c) Determine, after appropriate investigation, whether the applicant has complied with the requirements of the Act and these regulations, and if appropriate, issue a Certificate of Registration . . . .

(emphasis added). The statue governing the issuance of FLC certificates, 29 U.S.C. § 1812, provides in relevant part as follows:

> The Secretary, after **appropriate investigation and approval**, shall issue a certificate of registration (including a certificate of registration as an employee of a farm labor contractor) to any person who has filed with the Secretary a written application . . . .

The statute governing registration determination, 29 U.S.C. § 1813(a), provides in relevant part as follows:

> In accordance with the regulations, the Secretary **may refuse** to issue or renew, or may suspend or revoke, a certificate of registration (including a certificate of registration as an employee of a farm labor contractor) if the applicant or holder – has knowingly made any misrepresentation in the application for such certificate.

(emphasis added). The plain language of the statutes and regulations, emphasized above, indicate that the determination of whether to issue the FLC certificates is a discretionary, non-ministerial task that is not subject to a writ of mandamus. *See, e.g., Epstein v. Burwell*, CV 13-8728-GHK (CWx), 2014 WL 12591476, at * 8 (C.D. Cal. Aug. 5, 2014) ("[B]ecause the determination to allow individual

adjudication is discretionary, mandamus will not lie to compel the Secretary to pass regulations."). Plaintiffs cite no authority for their argument that Defendants had a nondiscretionary duty to inquire with Plaintiffs as to why they listed "30" in response to Item 9, and that Defendants' failure to do so amounted to a derogation of Defendants' statutory duty. Rather, it is clear that the statues and regulations vest discretionary authority with the DOL Secretary to make determinations as to whether he or she will issue FLC Certificates, and that the Secretary does not have a nondiscretionary duty to inquire with applicants and provide them with an opportunity to cure before issuing a refusal notice, as the Secretary has the discretion to determine when it is appropriate to do so. 29 C.F.R. § 500.48; *see also Heckler v. Ringer*, 466 U.S. 602, 617 (1984) (in context of adjudicating a writ of mandamus for a social security case, finding that the decision by the Secretary of Health and Human Services "as to whether a particular medical services is 'reasonable and necessary' and the means by which she implements her decision, whether by promulgating a generally applicable rule or by allowing individual adjudication, are clearly discretionary decisions" that are not subject to mandamus relief).

The Court further agrees with Defendants that the availability of an alternative administrative remedy serves as a basis to find that Plaintiffs have failed to state a claim for mandamus relief. *See* ECF No. 24-1 at 5-6. "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for plaintiff **only if** he has exhausted all other avenues of relief . . . ." *Heckler*, 466 U.S. at 616 (emphasis added). In this case, it is indisputable that Plaintiffs had an opportunity to appeal the initial refusal of the FLC Certificate, that they availed themselves of this opportunity, and that the appeal resolved in their favor. FAC ¶¶ 70-72. That the appeal was "costly" and created a "specter of uncertainty" over the operation of Plaintiffs' business, as Plaintiffs assert in their opposition, ECF No. 27 at 16-17, does not change the fact that they had an opportunity to appeal the DOL's initially adverse decision (and were allowed to operate pending the appeal and did ultimately achieve the issuance of their FLC Certificate) and does not allow Plaintiffs to side-step this requirement in stating a claim for mandamus relief.

For these reasons, the Court GRANTS Defendants' motion to dismiss Plaintiffs' mandamus claim for failure to state a claim. In an abundance of caution, the Court will permit Plaintiffs to amend this claim.

**B.    Due Process Claim and *Bivens***

In Count 2, Plaintiffs allege that they "have a right to due process before being denied their right to engage in their chosen profession [under the Fifth Amendment]" and that Defendants' initial refusal to renew Plaintiffs' FLC Certificate was arbitrary and capricious. FAC ¶¶ 92-93, 97. With regard to Defendants Rosalez and Seletsky, Plaintiffs allege that because they were both involved in the investigation and prosecution of Plaintiffs in the citation matter as an adversary, their involvement "in the role of the neutral decision maker" as to whether to grant Plaintiffs' FLC Certificate was a violation of Plaintiffs' due process rights. *Id.* ¶¶ 94-96. Plaintiffs further allege that Rosalez and Seletsky acted "arbitrarily and capriciously, and with the wrongful and improper intent to gain undue advantage in the citation matter, to retaliate against Plaintiffs for demanding a hearing on the citation and to chill Plaintiffs and others similarly situated from exercising their statutory and Constitutional rights." *Id.* ¶ 96. Plaintiffs thus seek an order from this Court declaring that Defendants' actions violated Plaintiffs' right to due process and that Seletsky and Rosalez face monetary damages pursuant to *Bivens*. *Id.*

Defendants seek dismissal of this claim, arguing that sovereign immunity bars Plaintiffs from making claims against Defendants, all of whom are federal government employees. ECF No. 24-1 at 7-8. Defendants further argue that *Bivens* is inapplicable in this case. *Id.* at 8-10. In the alternative, Defendants contend that even if a *Bivens* remedy was available, that Plaintiffs fail to state a claim for a Fifth Amendment due process violation, and that qualified immunity shields Rosalez and Seletsky from liability. *Id.* at 10-11.

As a general matter, Defendants are correct that the federal government is immune from suit unless it has waived its immunity. *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). "When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the

court's jurisdiction." *United States v. Mottaz*, 476 U.S. 834, 841 (1986). Plaintiffs' citation to the waiver of sovereign immunity contained in the APA at 5 U.S.C. § 702 erroneously contends that the APA sovereign immunity waiver also applies to Constitutional claims. *See* ECF No. 27 at 17. All but one[6] of the cases cited by Plaintiffs involve solely APA claims, which, as the parties are both aware, do provide for a waiver of sovereign immunity for individuals who suffered legal wrong on account of agency actions. 5 U.S.C. § 702. Nevertheless, as the Ninth Circuit has observed, the APA "does not confer jurisdiction independent of some other specific statue." *Office of Governor, Territory of Guam v. Dep't of Health and Human Servs., Admin. on Dev. Disability*, 997 F.2d 1290, 1292 (9th Cir. 1993). "[Section] 702 does not impose any substantive duties on agencies or government officials. It is a procedural statute that requires another relevant statute to form the legal basis for the complaint that the government has acted unlawfully." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007).

Here, Plaintiffs have alleged a violation of their Fifth Amendment due process rights—a constitutional tort. FAC ¶ 97. To the extent Plaintiffs bring this claim against Defendant Acosta, who is specifically sued in his official capacity as the DOL Secretary, this claim is therefore barred by sovereign immunity because the federal government has not consented to liability for constitutional tort claims. *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994); *see also Ardalan v. McHugh*, No. 13-cv-01138-LHK, 2013 WL 6212710, at *10 (N.D. Cal. Nov. 27, 2013) (citing *Consejo*, 482 F.3d at 1173 for the notion that "sovereign immunity bars constitutional claims against federal employees in their official capacities, and thus district courts lack subject matter jurisdiction to hear such claims."). To the extent Plaintiffs bring this claim against Defendants Rosalez and Seletsky in their individual capacities pursuant to *Bivens*, the Court finds that their Fifth Amendment due process claim is not cognizable

---

[6] In *Trudeau v. FTC*, the District of Columbia Circuit permitted the plaintiff to proceed on both an APA claim and a First Amendment claim against the Federal Trade Commission ("FTC"). 456 F.3d 178, 189-191 (D.C. Cir. 2006). However, the holding in *Trudeau* was narrow, as the panel noted, *inter alia*, that the FTC had conceded the availability of the plaintiff's claim. *See id.* Here, Defendants have not done likewise. Accordingly, not only is *Trudeau* not binding upon this Court, it is factually and legally inapposite.

11

under *Bivens* jurisprudence. "In *Bivens*, the Supreme Court provided a judicially-created cause of action for damages arising out of constitutional violations by federal officers, holding that 'petitioner is entitled to recover *money damages* for any injuries he has suffered as a result of the agents' violation of the [Fourth] Amendment.'" *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016) (quoting 403 U.S. at 397) (emphasis added). The Supreme Court has set forth a two-step inquiry for deciding whether or not to recognize a *Bivens* remedy. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). First, "there is the question of whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* Second, even in the absence of an alternative, a court must "pay[] particular heed … to any special factors counselling hesitation before authorizing a new kind of federal litigation." *Id.* However, the Supreme Court has recognized *Bivens* claims in only three[7] specific contexts, none of which apply here, and has recently cautioned that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity," especially given the fact that it has refused to extend *Bivens* to any new context or new category of defendants for the past thirty years. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017).

In *Western Radio Servs. Co. v. U.S. Forest Serv.*, the Ninth Circuit considered whether to extend a *Bivens* remedy to a factual scenario similar to the one in this case—a plaintiff alleging that individual defendants were responsible for a federal agency's denial of its application to conduct activities for its business. 578 F.3d 1116, 1123 (9th Cir. 2009). The panel reasoned that because "[t]he APA expressly declares itself to be a comprehensive remedial scheme," and the APA sets forth the procedures for judicial review of agency action, that the APA "leaves no room for *Bivens* claims based on agency action or inaction." *Id.* at 1122-23. "In sum, the design of the APA raises the inference that Congress 'expected the Judiciary to stay its *Bivens* hand' and provides a 'convincing reason for the Judicial

---

[7] "Since *Bivens*, the Supreme Court has recognized implied causes of action for damages against federal employees for only three types of constitutional violations: (1) police search and seizure in violation of the Fourth Amendment, *see Bivens*, 403 U.S. 388; (2) gender discrimination by a congressman in violation of the Fifth Amendment for an employee not covered by Title VII, *see Davis v. Passman*, 442 U.S. 228 (1978); and (3) deliberate indifference toward a prisoner in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980)." *Ardalan*, 2013 WL 6212710, at *10.

12

Branch to refrain from providing a new and freestanding remedy in damages." *Id.* (quoting *Wilkie*, 551 U.S. at 550). Here, as discussed above, Plaintiffs clearly had an administrative remedy for the DOL's initial adverse action, and they availed themselves of this administrative remedy. Under the logic of all of the cases cited above, Plaintiffs therefore do not have a remedy under *Bivens* against Defendants Rosalez and Seletsky.

Furthermore, in light of the foregoing, the Court sees no basis or any legal authority upon which it could grant Plaintiffs the declaratory relief they seek. The facts alleged do not state a due process[8] violation because "[d]amage to the reputation of a business, without more, does not rise to the level of a constitutionally protected property interest." *WMX Technologies, Inc. v. Miller*, 197 F.3d 367, 376 (9th Cir. 1999) (en banc); *see also Skurdal v. Fed. Detention Center*, No. C12-706 RMS-MAT, 2013 WL 5313192, at *7 (W.D. Wash. May 21, 2013) ("In the absence of claims for monetary damages against the federal-government defendants and a case or controversy that might justify prospective equitable relief, Mr. Skurdal cannot maintain a lawsuit for declaratory relief from the federal-government defendants."). Plaintiffs have not demonstrated that they were deprived of a liberty or property interest protected under the Due Process Clause, given that the FAC acknowledges that they continued to operate during the administrative appeal process and ultimately obtained the renewal of their Certificate. Therefore, the Court GRANTS Defendants' motion to dismiss this claim for failure to state a claim, with leave to amend.[9]

//

---

[8] To bolster their due process argument, Plaintiffs claim that the DOL "has embraced the abuse of due process as a policy and tactic" and in support, cite two non-precedential cases in which federal courts admonished the DOL for acting in bad faith and causing actual financial harm to businesses. ECF No. 27 at 10 (citing *Perez v. Pan-American Berry Growers*, Nos. 6:12–cv–1474–TC, 6:12–cv–1566–TC, 6:13–cv–1439–TC, 2014 WL 198781 (D. Or. Jan 15, 2014) and *Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554 (5th Cir. 2015)). These cases, however, are both factually and legally distinguishable from the situation presented in this case, where, as Plaintiffs acknowledge, they ultimately obtained the renewal of their Certificate through the administrative appeals process. The Court therefore sees no basis for Plaintiffs' allegations about the DOL's "abusive tactics," which cannot save their due process claim.

[9] Accordingly, the Court need not address the parties' remaining arguments on whether Defendants are entitled to qualified immunity.

## C. APA Claim

Next, Plaintiffs allege that Defendants violated the APA through "willfully and unlawfully" denying Plaintiffs' Certificate renewal application and seek an order from the Court "enjoining Defendants' actions from retaliating against employers who challenge DOL citations and prohibiting Defendants from using the Registration process to gain an undue advantage in related civil prosecutions." FAC ¶¶ 101, 107.

The Court must dismiss this claim for lack of subject matter jurisdiction. Under the APA, federal courts may review "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. "Only final agency decisions are subject to review under the APA." *Pac. Coast Fed'n. of Fishermen's Ass'ns, Inc. v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1033 (9th Cir. 2001). The Ninth Circuit has adopted a two-part test for determining the finality of agency decisions. *See id.* "[F]or an administrative agency action to be considered final, 'the action should mark the consummation of the agency's decision making process; and (2) the action should be one by which rights or obligations have been determined or from which legal consequences flow." *Id.* Here, the initial denial of Plaintiffs' Certificate renewal is not a "final agency action" over which this Court would have jurisdiction. According to the statute governing the FLC Certificate process, judicial review in federal district court is available to "[a]ny person against whom an order has been entered after an agency hearing . . . ." 29 U.S.C. § 1813(c). Plaintiffs requested and received a hearing after the initial denial of their FLC Certificate, and then obtained the renewal of their Certificate. As described by Defendants, "[t]he interim denial . . . was not the consummation of the agency's decision-making process and did not determine the rights or obligations of any party," ECF No. 24-1 at 12, and therefore does not qualify as a final agency action under the Ninth Circuit's two-part test. *See Nat'l Marine Fisheries*, 265 F.3d at 1033. The Court thus DISMISSES this claim for lack of subject matter jurisdiction, but in an abundance of caution, will permit Plaintiffs leave to amend.

//

**D.     EAJA Claim**

In Count IV, Plaintiffs state that if they prevail, they will seek attorney's fees and costs under the EAJA. FAC ¶ 109. However, because the Court found it appropriate to dismiss all of Plaintiffs' preceding claims, the Court need not address whether Plaintiffs are entitled to EAJA awards at this time.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss the FAC (ECF No. 24). Plaintiffs must file their amended complaint within twenty (20) days of electronic service of this Order, and should only amend if amendment would not be futile based on the law and findings in this Order.

IT IS SO ORDERED.

Dated:   **August 9, 2017**                              **/s/ Lawrence J. O'Neill**
                                                         UNITED STATES CHIEF DISTRICT JUDGE